# McKleroy *v.* Cantey & Randolph.

*Attachment for Rent by Landlord; Garnishment of Assignee.*

1. *Landlord's lien on tenant's goods, for rent of storehouse; garnishment against assignee.*—When a tenant has made an assignment for the benefit of his creditors, the landlord may sue out an attachment to enforce his statutory lien on the goods and effects for the rent of the house in which the tenant lived, or carried on his business (Code, §§ 3069–70), and may summon the assignee by process of garnishment; and he is entitled to a judgment of condemnation for goods and effects remaining unsold in the hands of the garnishee, and also a money judgment for the proceeds of goods sold by him; but not for the proceeds of sale of property to which, though used by the tenant in and about his business, the landlord's lien never extended, nor for money collected for goods sold by the tenant, in the regular course of trade, prior to the assignment.

APPEAL from the City Court of Anniston.
Tried before the Hon. B. F. CASSADY.

[McKleroy v. Cantey & Randolph.]

Attachment by John M. McKleroy, as landlord, against Cantey & Randolph, his tenants, for the rent of a storehouse in Anniston, on the ground that the tenants had made an assignment for the benefit of their creditors; and garnishment against A. P. Agee, the assignee. The court discharged the garnishee on his answer, and this judgment, to which the plaintiff excepted, is here assigned as error. The opinion states the material facts.

J. J. WILLETT, for appellant, cited Code, §§ 3069–70; *Lomax v. LeGrand*, 60 Ala. 537; *Ex parte Barnes*, 84 Ala. 542; *Abraham v. Nicrosi*, 87 Ala. 173; *Weil v. McWhorter*, 94 Ala. 540.

BENJ. MICOU, *contra*, cited *Teague, Barnett & Co. v. LeGrand*, 85 Ala. 493; *Levisohn v. Waganer*, 76 Ala. 412; *Hodges v. Coleman*, 76 Ala. 103; *Godden v. Pierson*, 42 Ala. 370; *Jones v. Crews*, 64 Ala. 368; *Roby v. Labuzan*, 21 Ala. 60; *Smith v. Ingram*, 90 Ala. 529.

COLEMAN, J.—The defendants, Cantey & Randolph, merchants doing business in Anniston, were indebted to plaintiff for rent of the storehouse in which they conducted their mercantile business. On the 4th of April, 1891, as appears from the answer of the garnishee, the defendants made a general assignment to A. P. Agee, "for the benefit of their creditors, of all their notes, accounts, office furniture, and all effects then unsold, which goods, furniture and effects, were at the time of the assignment in the building in which they were doing business, and for which defendants owed rent." On the 17th of April, 1891, the plaintiff (McKleroy) sued out an attachment against Cantey & Randolph, to enforce his landlord's lien, and had process of garnishment served upon the assignee, Agee. The attachment suit was prosecuted to judgment against the defendants in attachment, and the answer of the garnishee not being contested, the court held that plaintiff was not entitled to a judgment against him, and he was discharged. The appeal is prosecuted from the judgment of the court discharging the garnishee.

In addition to the facts stated above, the answer of the garnishee proceeds as follows: "The said garnishee came into the possession, by and under said assignment, of a large number of book accounts against various and sundry persons, living at different places, about $6,700.00 to $7,000.00, from which he has collected the sum of $5,000.00, which he

[McKleroy v. Cantey & Randolph.]

now holds; that he also came into possession by said assignment of a mule, which he sold for $40.00, and a dray which he sold for about $15.00, and some other articles which he sold, and for which he received the purchase-money; that he went into possession of the storehouse, and that all the effects, &c., came into his possession by virtue of the assignment," &c. He stated, also, that the mule and dray "were used by said defendants in and about their business as merchants;" and that about 600 cheroots, which they had sold, were returned to him.

Section 3069 of the Code declares, "The landlord of any storehouse shall have a lien on the goods, furniture and effects belonging to the tenant, for his rent, which shall be superior to all other liens, except those for taxes." Section 3070, subd. 2, provides that the landlord may enforce his lien by attachment, when the tenant has made an assignment for the benefit of his creditors.

The landlord's lien is declared by the statute. It does not depend for its creation upon distress by the landlord, or the suing out of the attachment. As was held in *Ex parte Barnes*, 84 Ala. 540, the lien is understood to enter into, and is a part of every contract between the landlord and tenant for the lease of a storehouse, and the remedy by attachment is merely a means provided by the statute for the enforcement of the lien. Whoever buys from the tenant goods, furniture or effects, upon which the law fixes the lien, with a knowledge of the existence of the relation of landlord and tenant, is charged with notice of this lien for whatever may be owing from the tenant to his landlord. No assurance of the tenant himself will suffice to invest his vendee with the character of an innocent purchaser, or enable him to hold the property discharged of the lien. Goods sold by a merchant in the usual course of trade are discharged of the lien, for such necessarily, from the character of the business, must be within the understanding of the parties; but goods conveyed by a merchant in payment of an antecedent debt, and purchased solely for the purpose of collecting a debt, is not within the intendment of the parties to the rental contract. As was said in *Weil v. McWhorter*, 94 Ala. 540, "if a dealer casually owes a customer, and the customer has need of his debtor's wares, the satisfaction of such indebtedness by supplying the necessity would be in due course of trade." In such case, the collection of the debt is not the purpose intended by the transaction.

In the case of *Fox v. Jones et al.*, reported in 8 So. Rep. 449, a case decided by the Supreme Court of Florida, the

contest was between the landlord, seeking to enforce his lien, and the assignee of the tenant, to whom an assignment had been made for the benefit of his creditors. The court held, that the "assignee acquired no greater interest in the goods than the assignor possessed before the assignment," and the assignee took them subject to the landlord's lien; "that the landlord could not be deprived of his lien at the will of the tenant, by assigning the goods in the rented house to a third party." In *Westmoreland v. Foster*, 60 Ala. 455, it was held that, "when the crop had been converted into money, and such money was in the hands of a third person, who had purchased the crop with a knowledge of the lien, then assumpsit for money had and received would lie." See, also, *Thompson v. Merriman*, 15 Ala. 166 ; *Atkinson v. James*, 10 So. Rep.; *Aderhold v. Bluthenthal*, *ante*, p. 66. We are clearly of the opinion that, when an assignee of a tenant converts into money "goods, furniture and effects upon which the landlord had a lien at the time of the assignment, and the landlord seeks to enforce his lien by attachment against his tenant, a right given by the statute in cases where the tenant makes a general assignment, such money in the hands of the assignee may be reached by process of garnishment.

The case at bar, in some respects, is unlike the case of *Hodges Bros. v. Coleman & Carroll.* In the latter case, Hodges Bros. were creditors of Jackson & Brother. Jackson & Brother sold their goods to Bruner & Loeb, and Bruner & Loeb sold the goods to Coleman & Carroll. Hodges & Bros. sued out an attachment against Jackson & Brother, and garnished Coleman & Carroll for an alleged balance due on their purchase. Bruner & Loeb were not parties to the suit. Hodges & Brothers were simple creditors without a lien upon the goods. To maintain their action, it was necessary to set aside the sale by Jackson & Brother as fraudulent and void, and yet, to sustain the garnishment process, which sought to reach a balance due on the purchase, it was necessary to maintain the validity of the sale. The balance due from Coleman & Carroll could not be reached as a debt due, except upon the ratification of the sale of the goods to Coleman & Carroll. The court in that case further held, that in no event could the plaintiff proceed to judgment against the garnishees, without notice to Bruner & Loeb, the intermediate purchasers. The principles of law applicable to the facts of that case in this respect do not apply to the facts of the present case.

In the case of *Jones v. Crews*, 64 Ala. 370, relied on by

appellee, it is said: "There can be only a moneyed judgment against the garnishee, on a debt ascertained to be due from him to the defendant, or a condemnation of chattels in his hands, the property of the defendant, and an order that he deliver them to the sheriff on demand, to be sold in satisfaction of the plaintiff's judgment, not against the garnishee but against the defendant." Construed with reference to the facts in that case, the principle is correct, but must not be taken in a literal sense as absolutely applicable to all cases. One of the issues in the case of *Hodges Bros. v. Coleman & Carroll*, 76 Ala. 103, was, "that the transfer of said stock of goods to said Bruner & Loeb was for the purpose of hindering, delaying and defrauding the creditors of Jackson & Brother, and that Coleman & Carroll (the garnishees) had notice of the same." This court held that, if this averment was found true, then it would have been the duty of the court to render judgment of condemnation, and that the goods be delivered up on demand and sold by the sheriff in satisfaction of plaintiff's claim. Now it is apparent that, as between Jackson & Brother, the attachment debtor, and his vendee or a sub-vendee, the property did not belong to Jackson & Brother. A judgment condemning the property in the hands of Coleman & Carroll, the garnishees, could have been maintained only upon the grounds that it was property liable to plaintiff's claim, and subject to the attachment. So, in the case at bar, the answer of the garnishee admits his possession of property upon which there was the landlord's lien, with a knowledge of the lien, and as to the refrigerator and water-cooler, these effects were sold by him after service of garnishment. If the property had remained in his hands, undisposed of, the court would have enforced the landlord's lien by a sale of the property. Is it permissible for the garnishee, after the attachment is sued out, which is expressly authorized by the statute where an assignment has been made, and the attachment levied by process of garnishment, for the garnishee to defeat the condemnation of the property, and collection of the claim, by converting the property into money? We think not. The statute (Code, § 2978) contemplates the condemnation of property in the possession of the garnishee, and not property which has been sold by him and converted into money. In such case, we must hold that the money, the proceeds of the property which was subject to plaintiff's attachment, in the hands of the garnishee, takes the place of the property, and is sufficient to authorize the rendition of a money judgment against the garnishee.

The "cheroots" admitted by the garnishee to be in his possession and not sold should have been condemned by the court. We are of opinion that the landlord's lien did not extend to the mule and dray of the defendant debtor. The statute declares the lien upon the "goods, furniture and effects" of the tenant. The word "effects" must be construed in connection with "goods" and "furniture," and refers to property *"ejusdem generis."* Moreover, in *Ex parte Barnes, supra,* it was held that the lien was upon such property only of the tenant as had enjoyed the protection of the leased premises, and not to all the effects of the tenant. This rule was afterwards re-affirmed in *Abraham v. Nicrosi,* 87 Ala. 173, and in *Weil v. McWhorter,* 94 Ala. 540.

We have previously declared that goods sold in the "usual course of trade" were discharged of the lien, and it is evident that the lien is not transferred to the *choses* in action or debts which may be owing for goods legitimately sold by the tenant in the "usual course of trade" on a credit, before the making of the assignment. Money in the hands of the assignee collected by him upon such notes and accounts is not subject to the prior lien of the landlord. Such money in his hands will be paid out in accordance with the terms of the assignment.

For the errors pointed out, the case must be reversed, and the cause remanded.