THE STATE, EX REL. HANNA ET AL., *v.* HITCHENS ET AL.

[No. 3,024.    Filed June 29, 1900.]

CONSTABLE. — *Compensation.* — *Expenses in Caring for Property Seized.*—A constable is entitled to be reimbursed for necessary and reasonable expenditures made by him in good faith in caring for and preserving property seized under a valid process.    *p. 247.*

SAME.—*Compensation.—Expenses of Sale.*—The duty of selling goods levied on by a constable devolves upon that officer, for which serv-ices he receives as compensation the statutory commission.    He is not authorized to tax and collect, as part of his costs, the sums paid to an auctioneer and clerk employed by him to assist in the sale. *pp. 248, 249.*

SAME.—*Failure to Itemize Costs.*—The failure of a constable to itemize in his return of writ the services for which he charged will not, in an action by a judgment creditor to compel such officer to turn over money unlawfully retained as costs, defeat the constable's right to statutory fees to which it clearly appears from the evidence he is entitled.    *p. 249.*

From the Cass Circuit Court.    *Reversed.*

*F. Swigart, J. C. Nelson* and *Q. A. Myers,* for appellants.

*D. B. McConnell* and *E. B. McConnell,* for appellees.

COMSTOCK, J.—This action was prosecuted against the appellees George W. Hitchens, constable, and John Mitchell and Andrew Ray, his bondsmen, to recover money collected by Hitchens as principal and retained from appellants. Nine creditors of appellants (relators) obtained judgment before a justice of the peace against them, and caused executions to issue to appellee Hitchens as constable.    He levied the executions upon the store of the relators in the city of Logansport, Indiana, and sold a portion of the goods to satisfy the same.    The relators claim that the total amount due on the judgments, interest, fees, costs, and accrued costs, at the time they were paid, was $821.72; that the constable charged and retained the sum of $1,033.77, being $203.14 more than he was authorized by the statute of Indiana to

charge and retain. The cause was put at issue, tried by the court, and judgment rendered for costs in favor of appellees.

The action of the court in overruling appellants' motion for a new trial is the only error assigned. There are four reasons assigned in the motion for a new trial. The first is: "The finding of the court is not sustained by 'sufficient evidence." The second: "The finding of the court is contrary to law." The record discloses no ruling nor exception thereto upon which to base the third and fourth reasons for a new trial. It remains only, therefore, to consider the first and second reasons for a new trial.

The following is the return made to the writ by appellee Hitchens: "I received this writ on the 1st day of June, at 1:30, 1897, and on the 23rd day of September, by virtue thereof, and also of eight other writs against the same defendants in my hands from the dockets of David Laing and Geo. W. Fender and J. H. Walters, justices of the peace of Cass county, Indiana, I levied all of said writs upon a certain stock of notions, pictures, frames, and toys, etc., belonging to the defendants, situated in a storeroom at 421 Market street, Logansport, Indiana, and I proceeded to have the stock appraised according to law, which was done by Frank M. Polk and Jas. A. Day, and thereafter, to wit, on the 4th day of October, I advertised the said goods for sale as required by law, and when the time of the sale arrived, the said stock having come into litigation by claimants against the property, to wit, a suit by William Douglass in the Cass Circuit Court, I suspended said sale until the issue of that case was determined, and after the same had been determined I again advertised said stock for sale according to law, by posting three written and printed notices in the city of Logansport at public places therein, and one on the door of the building in which said goods were contained, and at the time appointed for the sale I proceeded to sell said stock of goods under said writs at public auction and outcry, beginning on the 6th day of November and con-

tinuing the same from day to day as required by law until the 2nd day of December, when, having realized the sum of $1,042.10 upon the sale under said writs, I suspended the sale, leaving a portion of the goods levied upon still unsold, and having sold sufficient of the stock to satisfy said writs against said defendants in my hands and out of the proceeds thereof I paid the judgments of $118.20 in favor of Gustave Burgman, which with interest, costs, and accruing costs amounts to $167.15; and also another judgment in favor of Gustave Burgman of $117.35,. which with interest, costs, and accruing costs amounts to $166.34; and also another judgment in favor of Gustave Burgman of $117.91, which with interest, costs, and accruing costs amounts to $166.60; and also another judgment in favor of Gustave Burgman of $119, which with interest, costs, and accruing costs amounts to $167.21; and also another judgment in favor of the National Jewelry Company of $35.46, which with interest, costs, and accruing costs amounts to $59.54; and also another judgment in favor of James E. Patton & Company of $22.66, which with interests, costs, and accruing costs amounts to $46.08; and also another judgment in favor of Daniel P. Rhoads, $13.33, which with interests, costs, and accruing costs amounts to $37.35; and also another judgment in favor of Wilson, Humphrey & Company, of $92.29, which with interest, costs, and accruing costs amounts to $114.88; and also another judgment in favor of the Toledo Manufacturing Company for $85.88, which with interest, costs, and accruing costs amounts to $108.94,—making in all the sum of $1,033.79; and I have paid the rent and storage room for said goods so levied upon for the period of seventy days, amounting to $70, and also the appraisers; and the stock of goods being situated in an eligible room in a good locality to realize the largest possible price, and it being necessary to the economical and safe management of the sale to employ an auctioneer, and it being necessary for the purpose to employ a clerk, I have

State, *ex rel.*, *v.* Hitchens.

paid the services of both as part of the costs herein, and I herewith return this writ satisfied · in full, and I further certify that the surplus of goods levied upon under this writ and the proceeds thereon are held at this time under other writs against the defendant Charles M. Hanna. Geo. W. Hitchens, Constable."

It appears from the record that appellee Hitchens retained from the proceeds of the sale of which he made return, in addition to the fees provided by statute, the amount expended by him for rent of storeroom, the amounts paid the auctioneer, clerk, and watchman, the amount paid for lock for door of the store, and the cost of lighting the room by night.

The proposition that an officer can retain for his services only such fees as are allowed by law requires the citation of no authorities. The principal question presented by this appeal is whether he is entitled to the amounts thus retained or is limited to the fees fixed by statute. The act providing for fees for constables went into force March 8, 1897. Acts 1897, pp. 217, 218. This fee bill is intended to provide compensation for personal services which the law imposes upon him. While the decisions are not in harmony, from the weight of authorities, we think the proposition may be deduced that a constable is entitled to be reimbursed for necessary and reasonable expenditures made by him in good faith in taking care of and preserving property seized under valid process.

It was said in *Cramer* v. *Appenstein,* 16 Col. 495, 27 Pac. 713, by the supreme court of Colorado, that "the ordinary fees allowed by statute evidently were not intended to cover all extraordinary disbursements which the sheriff may be compelled to make in the faithful discharge of such duties." The constable's return, which we have set out, shows the date of the levy, of the expenditures, the appraisement of the stock, the advertisement of the sale, the suspension of the sale because of litigation involving the title of

the property, the further advertisement after the determination of said litigation, and the sale of said property from day to day at auction, until the sum of $1,042.10 was realized therefrom; that he applied of the proceeds of said sale the sum of $1,033.79 to the payment of the several executions in his hands; that, between the time of the levy of the executions and the conclusion of the sale, he paid rent for the room in which the goods were stored—the same room in which the judgment defendants had done business —and sold, at the rate of $1 per day for seventy days. The return further shows the employment of an auctioneer and clerk, but does not state the amount paid the appraisers, the auctioneer, the clerk, the watchman, nor the cost of advertisement. As to these items the return is defective. These items, however, for which the constable retained pay from the money realized were testified to by the constable, and were not disputed. It appears from the record that it became necessary to procure a lock for the door of the storeroom; he testified that he employed and paid a watchman to guard the goods for a time, and that he paid for lighting the storeroom while the sale of the goods was in progress at night.

In *Rogers & Co.* v. *Simmons,* 155 Mass. 259, at p. 261, it is said: "There are strong reasons against allowing an officer to use his discretion in making charges against property beyond those expressly allowed by the statute, and such expenses as are necessarily incurred in the performance of his legal duties. In this state, when the property is of such a kind that it is necessary for the officer to procure and pay for storage for it, he is allowed such sums as are properly so paid,  *  *  *. But for all the officer's personal services, whether ordinary or extraordinary, the fees expressly provided by the statute are intended to be the only compensation."

Neither the necessity for the storage of the goods, the procuring of the lock, nor the reasonableness of the amounts

paid for the use of the storeroom, or for the lock, or the watchman, are questioned. The sale of the property was a personal service, the duty of performing which the law cast upon the constable, and for which the fee bill allowed him a commission. The law would not authorize him to charge the parties for the additional cost either of an auctioneer or a clerk. The duty of selling the goods devolved upon the officer. An office is accepted with its burdens. In some cases in which the officer is called upon to act the compensation made by statute seems small; in others it is ample.

Counsel for appellant argue that inasmuch as the constable did not itemize in the return of the writ the services for which he charged that he is entitled to no fees. This claim of counsel might be allowed did not the various items for which he retained the money in question fully appear from the evidence before us. The valid may readily be separated from the invalid. The law cast upon the officer the obligation of protecting and taking care of the goods. The storage and the securing of the lock and the watchman were necessary to the discharge of this obligation for which the fee bill made no provision. See *Smith* v. *Huddleston,* 103 Ala. 223, 15 South. 521.

The finding of the court allowed appellee to retain the amounts paid to him for auctioneer and clerk hire. As to these items, the judgment was contrary to law. Many cases are cited by counsel representing the adversary parties. When applicable to the facts shown by the record before us they are not in conflict with the opinion herein expressed. Constructive fees are not allowed in Indiana, but reasonable and necessary allowances for the care of property held under a valid execution can not properly be considered fees. They are expenditures for the protection of the property payable out of the fund realized from its sale. The watchman was employed and paid to guard the property pending litigation.

The judgment is reversed, and the trial court is directed to sustain appellants' motion for a new trial.